**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

URBAN OUTFITTERS, INC., et al.      :      CIVIL ACTION

           v.                      :

BCBG MAX AZRIA GROUP, INC., et al.    :      NO. 06-4003


**MEMORANDUM RE: REMAND FROM THE THIRD CIRCUIT**

**Baylson, J.**                                                 **March 2, 2010**

In this trademark infringement case, the Court granted a preliminary and then a

permanent injunction in favor of Plaintiffs, but declined to award attorneys fees under the

"exceptional case" doctrine. See the Court's Memoranda dated April 18, 2007, 511 F. Supp. 2d

482, and August 24, 2007, 2007 WL 2463379, an Order dated May 10, 2007 (Doc. No. 153), and

most importantly on this issue, a Memorandum dated January 31, 2008 (Doc. No. 259), 2008 WL

282742. On appeal, the Third Circuit affirmed the injunction and orders, except for one narrow

issue, relating to the exceptional case doctrine. 318 Fed. App'x 146 (3d Cir. 2009).

## I.      Factual and Procedural Background

In the Third Circuit's opinion, Judge Roth concluded that although this Court had

considered Defendants' alleged discovery misconduct, "the [district] court failed to explain

whether it had considered the other examples of BCBG's chicanery, that Urban Outfitters has

identified." Id. at 148.[1] At this point, a footnote delineated the following specific suggestions

asserted by Plaintiffs as to "BCBG's chicanery," which the Court has slightly rephrased, as

---

[1] The dictionary defines "chicanery" as "1: deception by artful subterfuge or sophistry: TRICKERY 2: a piece of sharp practice (as at law): TRICK." Merriam-Webster's Collegiate Dictionary 197 (10th ed. 2001).

follows:

> Specifically, Urban Outfitters suggests:
>
> (1) Albert Papouchado lied about (a) not having heard of the Free People mark, (b) BCBG's plans to open freestanding stores to sell True People clothing, and © his promise to not distribute brochures for True People at the February 2007 Magic Show.
>
> (2) Michael Amar lied about the pink True People tag that resembled a Free People tag.
>
> (3) A third witness, Maryann Casale-Tooker, lied about Amar's whereabouts so he couldn't be questioned about the Parallel concept, saying he was in China when he was in fact in the United States.
>
> (4) BCBG withheld the Parallel concept booklet for months and failed to produce numerous other documents responsive to discovery requests.
>
> (5) Plaintiffs raise, as well, a variety of allegations of misconduct on behalf of BCBG's counsel.[2]

See id. at 148 n. 2.

## II.     Discussion

This Court's prior opinions show consideration of several factors on the exceptional case doctrine: first, Plaintiffs' allegations that Defendants had engaged in litigation misconduct; second, Defendants' actions which the Court found constituted infringement; and third, the fact that Plaintiffs did not seek damages.

---

[2]The inclusion of this item in the footnote may seem to contradict the textual comment by the Third Circuit that this Court had adequately considered Defendants' discovery misconduct when rejecting Urban Outfitters' claims.  The Court will construe the last item as relating to Plaintiffs' allegations of litigation misconduct by Defendants' counsel, other than discovery misconduct.  The Court will consider the phrase "BCBG counsel" to include Defendants' officers or employees.

The Court, after reexamining the record, will discuss each of these items in turn. Before doing so, it is also important that the Third Circuit noted "in remanding for further consideration of 'exceptional case' fees, we do not suggest a particular outcome must result." Id. at 149 n. 3.[3]

The Court will not go into discovery misconduct any further. In addition to the Third Circuit's ruling that this Court had adequately considered it, any deeper inquiry into discovery misconduct would require reopening the record, perhaps taking testimony from the individual attorneys and/or paralegals who worked on this case, and would lead this Court down a possibly endless road, at great expense.

In its Memorandum of January 31, 2008, the Court reviewed testimony presented at hearings held on October 9, 2007 and October 28, 2007. See 2008 WL 282742, at *3-7. This evidence need not be discussed further.

Each item listed in footnote 2 of the Court of Appeals's Opinion, will be discussed:

As to whether Mr. Papouchado lied concerning three separate items, the Court has reexamined the record on each of these. The Court specifically made findings rejecting Mr. Papouchado's credibility in the prior opinions, but did not adequately consider these in its ruling on the exceptional case doctrine. The Court had previously found that Mr. Papouchado had not been honest when he had misled the Court about the brochure in connection with the preliminary injunction hearing. See Apr. 18, 2007 Mem., 511 F. Supp. 2d at 488-89. The Court had already sanctioned Defendants with attorney fees for that transgression. The Court interprets the Third

_____

[3]Defendants assert that the record should be reopened and that the Court should consider a wide variety of other evidence, including Plaintiffs' alleged litigation misconduct, before reaching any conclusions. The Court rejects this and believes that it is obliged to follow the limited remand of the Third Circuit, which did not include any instruction to reopen the record, or to review Defendants' allegations against Plaintiffs.

Circuit remand that this factor may also be taken into account in assessing the "exceptional case doctrine" now that the Defendants' liability has been affirmed.

Concerning Mr. Papouchado's testimony about not having heard of the Free People mark, other testimony indicated that he was present at a meeting where it was discussed. It may be that Mr. Papouchado has a "convenient memory," but the Court previously found that Mr. Papouchado was not credible. Id. at 501. The Court comes to the same conclusion about Mr. Papouchado denying BCBG's plans to open free-standing ("Parallel") stores to sell True People clothing. Even though the women's fashion business is quick changing, and subject to shifting concerns about fashion, prices and competitors, Mr. Papouchado had expertise in the industry and a good recollection about many facts, but concealed the truth on several separate occasions.

Respecting Urban Outfitters's suggestion that Michel Amar lied, this Court considered this claim and rejected it based on the testimony of Surgi Choukroun, discussed in detail in the Memorandum dated January 31, 2008. See 2008 WL 282742, at *2. The Court does not retract its findings that Mr. Amar was truthful concerning the "hanging tags," but does find that Defendants unduly delayed and caused Plaintiffs additional and unnecessary expenses in finding out the origin and use of the "hanging tags."

As to the allegations that a third witness, Maryann Casale-Tooker, lied concerning Mr. Amar's whereabouts, the Court found her generally credible; indeed, her testimony was favorable to Plaintiffs as it showed that Defendants' discovery obligations had been deficiently handled. See Aug. 24, 2007 Mem., 2007 WL 2463379, at *8. Nonetheless, the Court finds that overall, as revealed by the entirety of the evidence, Defendants did conceal Mr. Amar's whereabouts for a brief period. The various explanations that were given by the witnesses and BCBG's counsel

about Mr. Amar were at variance with one another and with Mr. Amar's own testimony when he

eventually appeared and testified: Mr. Amar admitted that he had been in the United States for a

period of time when BCBG's various representatives asserted that he was in China.  Of course, it

is possible that counsel and the witnesses were not fully informed, and because Mr. Amar

eventually testified, there was no prejudice.  Nonetheless, the different accounts concerning Mr.

Amar are troubling and reflect, at a minimum, failure to present accurate information.  There

were also inconsistencies in the reasons given as to why Ms. Campbell, whose testimony had

been relied on in prior opinions, did not appear to testify.  Defendants' omissions caused

Plaintiffs to expend time and expense on this issue, unnecessarily.

Concerning Plaintiffs' suggestion that BCBG withheld the Parallel Concept Booklet, the

Court concludes that Plaintiffs did present persuasive evidence on this point.  BCBG had

produced and was distributing to different shopping mall operators a marketing booklet for its

proposed Parallel Stores.  (See Hr'g Tr. 16:13-18:1, May 2, 2007 (Doc. No. 142).)  The Parallel

Booklet itself shows an upscale store (see Pls.' Ex. 325).

Lisa Stanley, who inadequately prepared to testify as a Rule 30(b)(6) corporate designee

for Defendants, testified about the Parallel concept, as a "melange" of five brands owned by Max

Azria.  Although she said that the brand "True People" was one of those five brands, and that the

name "True People" would appear on the window-front of Parallel stores, no specific decision

had been made to actually "market" True People clothing in Parallel stores.  (Stanley Dep. 67:5-

24, May 17, 2007.)  Miss Stanley later implied that denim clothing with the True People brand

may be sold in Parallel stores.  (Stanley Dep. 209:10-17.)  The Court finds that Ms. Stanley was

evasive, vague and ambiguous about whether the Defendants' plans about Parallel stores

included "marketing" the "True People" brand. (See Stanley Dep. 60:21-69:22.) It is hard to understand how the name of a brand would appear on a window-front of a store, but that may not include "marketing" that brand and not include selling clothing with the name of that brand inside the store. Also, Plaintiffs have shown that Defendants unduly delayed the production of documents relating to Parallel stores, and the Court concludes that Mr. Papouchado concealed the Parallel concept from Plaintiffs and the Court in his testimony and production of documents.

Further, the fifth Lapp factor, concerning Defendants' intent, for which the Court found that Defendants had an intent to infringe on Plaintiffs' copyright, takes on, in light of the findings articulated above, additional significance and justification for awarding attorneys fees in this case. In summary, taking all the relevant factors into consideration, Plaintiffs did satisfy the "exceptional case" doctrine.

Plaintiffs make numerous contentions about "litigation misconduct," other than discovery misconduct. Concerning these allegations of litigation misconduct, the advocacy of counsel in this case on both sides was at a high level, both in terms of legal work and vocal exuberance. The parties obviously felt strongly about their relative positions and instructed their counsel to spare no expense and no aggressive advocacy either for that matter. The record will disclose numerous verbal attacks by the lawyers on each other as well as on their parties' positions. Judges must ignore overly aggressive advocacy in order to come to a verdict on the merits that is warranted by the evidence.

It may be fairly said that some of the conduct described above constitutes "litigation misconduct." The Court does not find that any of Defendants' trial counsel acted improperly or unethically, but there were serious omissions and commissions by Defendants' witnesses.

The Court need not find that the non-prevailing party's position throughout a trademark case is "exceptional" in order for attorneys fees to be awarded; rather, courts have awarded partial attorney fee awards when the non-prevailing party's behavior in portions of the litigation warrants a fee award. See, e.g., Waco Int'l, Inc. v. KHK Scaffolding Houston Inc., 278 F.3d 523, 536 (5th Cir. 2002). Further support can be found in patent cases, for which, as trademark cases, attorneys fee awards to "the prevailing party" are permitted only in "exceptional cases," pursuant to 35 U.S.C. § 285. Despite finding the cases to be exceptional, courts have awarded only a "partial award of attorney fees" "for the same parts of th[e] litigation that rendered [the cases] exceptional," rather than full attorney's fees. ICU Med., Inc. v. Alaris Med. Sys., Inc., No. 04-0689, 2007 WL 6137003, at *9 (C.D. Cal. Apr. 16, 2007); see also, e.g., Ameritek v. Carolina Lasercut Corp., 99 F.3d 1160, at *3 (tbl) (Fed. Cir. 1996) (affirming a partial award of attorney fees).

III.    **CONCLUSION**

Considering the entire record, and those matters that the Third Circuit directed for remand, the Court concludes under the applicable legal standards reviewed in prior opinions on the exceptional case doctrine that Plaintiffs have established a right to recovery of some of their legal fees. In coming to this conclusion, the Court also takes into account the Third Circuit's use of the word "chicanery," which is indeed a very damning phrase. In considering Mr. Papouchado's misrepresentations and basically contemptuous behavior towards the Court, and the other matters mentioned above, the Court concludes that Plaintiffs have established a right to an award to some of their attorneys fees under the exceptional case doctrine.

Plaintiffs should not be entitled to all of their attorneys fees because of other factors

previously noted, including the fact that Plaintiffs did not seek damages, which many courts have held is an important issue weighing against the award of attorneys fees.

In considering all that went into this trial and the factors stated above, the Court has determined that the proper amount of attorneys fees to be awarded to Plaintiffs is 50% of the total attorneys fees and expenses which Plaintiffs spent in the preparation and presentation of their case, but not including attorneys fees on appeal.

If Plaintiffs seek attorneys fees on appeal, they should do so in to the Court of Appeals, initially.

An appropriate Order follows.


O:\CIVIL\06-4003 Urban Outfitters v. BCBG Max\Urban Outfitters - Memorandum Remand 3d Circuit.wpd